

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Shakhrukh Hamiduva,<br>    Detainee (ISN 22),<br>    Guantanamo Bay Naval Station<br>    Guantanamo Bay, Cuba;<br><br>Adina Hamidova,<br>    as the Next Friend of Shakhrukh<br>    Hamiduva;<br><br>*Petitioners,*<br><br><br><br>v.<br><br><br>GEORGE W. BUSH,<br>    President of the United States<br>    The White House<br>    1600 Pennsylvania Ave., N.W.<br>    Washington, D.C. 20500;<br><br>ROBERT M. GATES,<br>    United States Secretary of Defense<br>    Department of Defense<br>    1000 Defense Pentagon<br>    Washington, D.C. 20301-1000<br><br>REAR ADMIRAL DAVID M. THOMAS, JR.,<br>    Commander, Joint Task Force—<br>    Guantánamo<br>    JTF-GTMO<br>    APO AE 09360; and<br><br>ARMY COL. BRUCE VARGO,<br>    Commander, Joint Detention<br>    Operations Group, JTF—GTMO,<br>    JTF—GTMO<br>    APO AE 09360,<br><br>*Respondents.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

<u>**PETITION FOR WRIT OF HABEAS CORPUS**</u>

No. _____



## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Shakhrukh Hamiduva seeks the Great Writ. A citizen of Uzbekistan, Petitioner Shakhrukh Hamiduva acts on his own behalf and through his Next Friend, Adina Hamidova, his mother. Petitioner Shakhrukh Hamiduva is a civilian wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at the United States Naval Station in Guantánamo Bay, Cuba ("Guantánamo"). His detention is without lawful basis, without charge, and without access to counsel or any fair process by which he might challenge his detention. Petitioner Shakhrukh Hamiduva is being held under color and authority of the Executive, in violation of the Constitution, laws, and treaties of the United States, in violation of the fundamental due process principles of the common law, and in violation of customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner Shakhrukh Hamiduva or to establish in this Court a lawful basis for Petitioner Shakhrukh Hamiduva's detention. This Court should also order injunctive and declaratory relief.

## I.
## JURISDICTION

1.    Petitioner brings this action under 28 U.S.C. §§ 2241(a), (c)(1) and (c)(3), and 2242. Petitioner further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth and Sixth Amendments to the United States Constitution. Because they seek declaratory relief, Petitioners also rely upon Fed. R. Civ. P. 57.

2.    This Court is empowered to declare the rights and other legal relations of the parties in this matter by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual

US2000 10900552.1

controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.
## PARTIES

3.   Petitioner Shakhrukh Hamiduva is a citizen of Uzbekistan who is presently incarcerated and held in Respondents' unlawful custody and control at Guantánamo.   Upon information and belief, Petitioner desires undersigned counsel to file this petition on his behalf.  *See* Exhibit A, Declaration of Stewart D. Fried.

4.   Petitioner Adina Hamidova is a citizen of Uzbekistan.  Because her son has been denied access to legal counsel and to the courts of the United States, Petitioner Adina Hamidova acts as his Next Friend.  On her own and through the help of friends, Petitioner Adina Hamidova has tried repeatedly to contact her son and speak to authorities about his condition and unlawful custody.  Petitioner Adina Hamidova acts as  next friend in order to assist Petitioner Shakhrukh Hamiduva in seeking redress for these grievances.

5.   Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military.  Petitioner Shakhrukh Hamiduva is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order").  President Bush is responsible for Petitioner Shakhrukh Hamiduva's unlawful detention and is sued in his official capacity.

6.   Respondent Robert M. Gates is the Secretary of the United States Department of Defense.  Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war or, alternatively, pursuant to the Executive Order,

US2000 10900552.1

Respondent Gates has been charged with maintaining the custody and control of Petitioner Shakhrukh Hamiduva. He is sued in his official capacity.

7. Respondent Rear Admiral David M. Thomas, Jr. is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioner Shakhrukh Hamiduva and is sued in his official capacity.

8. Respondent Army Colonel Bruce Vargo is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Shakhrukh Hamiduva is presently held. He is the immediate custodian responsible for Petitioner Shakhrukh Hamiduva's detention and is sued in his official capacity.

9. Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

## III.
## STATEMENT OF FACTS

10. Upon information and belief, Petitioner Shakhrukh Hamiduva is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the government in any civil or military proceeding.

11. Petitioner Shakhrukh Hamiduva is not, nor has he ever been an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in

4

Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 524 U.S. 507, 516, 124 S. Ct. 2633, 2639 (2004) (plurality opinion).

12.    Petitioner Shakhrukh Hamiduva seeks to enforce his right to a judicial determination by an appropriate and lawful authority as to whether there is a lawful and factual basis for Respondents' determination that he is either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

13.    Upon information and belief, At the time of his seizure and detention, Petitioner Shakhrukh Hamiduva was not a member of the Taliban Government's armed forces or Al Qaeda.  Prior to his detention, he did not commit any violent act against any American person or property.  He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, the ensuing international armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda.  He remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

14.    Petitioner Shakhrukh Hamiduva has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

15.    Upon information and belief, Petitioner Shakhrukh Hamiduva desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

5

**The Joint Resolution**

16.    In the wake of the September 11, 2001 attacks on the United States, the United States, at

the direction of Respondent Bush, began a massive military campaign against the Taliban

government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of

Congress authorized President Bush to use force against the "nations, organizations, or

persons" that "planned, authorized, committed, or aided the terrorist attacks on

September 11, 2001, or [that] harbored such organizations or persons." Joint

Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224

(Jan. 18, 2001) ("Joint Resolution").

17.    As Petitioner Shakhrukh Hamiduva did not participate in the armed conflict at any point

in time, he is not properly detained pursuant to President Bush's authority as

Commander-in-Chief, under the laws and usages of war, or the Joint Resolution.

**The Executive Order**

18.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing the

United States Department of Defense to detain indefinitely anyone Respondent Bush has

"reason to believe":

    i.      is or was a member of the organization known as al Qaeda;

    ii.     has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or

    iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). President Bush

must make this determination in writing. The Executive Order was neither authorized

nor directed by Congress, and is beyond the scope of the Joint Resolution of September

18, 2001.

6

19.     The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview.  It establishes no standards governing the exercise of his discretion.  Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face.  The Executive Order authorizes detainees to be confined indefinitely without charges.  It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor rights to notice of consular protection or to consular access at the detainee's request.  It provides no right to appear before a neutral tribunal to review the basis for or the legality of a detainee's continued detention and contains no provision for recourse to an Article III court.  In fact, the Executive Order expressly bars review by any court.  The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms.

20.     The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner was, and is, being made by Respondents in the United States and in this judicial district.

21.     Upon information and belief, President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner is subject to the Executive Order.

22.     Petitioner Shakhrukh Hamiduva is not properly subject to the Executive Order.

23.     Petitioner Shakhrukh Hamiduva has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief, and/or the laws and usages of war in that Petitioner Shakhrukh Hamiduva has been

7

denied the process due to him under the common law and the Due Process Clause of the Fifth Amendment to the Constitution of the United States, domestic civil and military law, and international law.

## Guantánamo Bay Naval Station

24. On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba. In April 2002, prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo. Currently, some prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

25. Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *See Boumediene v. Bush*, Nos. 06-1195 and 06-1196, 2008 WL 2369628, at *45 (June 12, 2008).

26. On a date unknown to counsel, but known to Respondents, the United States military transferred Petitioner Shakhrukh Hamiduva to Guantánamo, where he has been held ever since, in the custody and control of Respondents.

## The Conditions of Detention at Guantánamo

27. Since gaining control of Petitioner Shakhrukh Hamiduva, the United States military has held him virtually *incommunicado*.

28. Upon information and belief, Petitioner Shakhrukh Hamiduva has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges. He has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately

8

informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioner Shakhrukh Hamiduva should not be informed of these rights. As a result, Petitioner Shakhrukh Hamiduva lacks any ability to protect or to vindicate his rights under domestic and international law.

29.    Upon information and belief, Petitioner has been forced to provide involuntary statements to Respondents' agents at Guantanamo.

30.    Upon information and belief, Petitioner Shakhrukh Hamiduva has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.,* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005); Physicians for Human Rights, "Break Them Down: Systematic Use of Psychological Torture by US Forces," Ch.3 (2005); United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees," Feb. 4, 2005; International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30, 2004; International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR

9

511452004); Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.

31.    Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, forced nudity and humiliation, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See e.g.*, Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

32.    In a confidential report to the United States government, the ICRC charged the U.S. military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4.

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

US2000 10900552 1

33.   Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving beatings, temperature extremes, dogs, prolonged isolation, and loud music. *See, e.g.,* Carol D. Leonnig, "Guantanamo Detainee Says Beating Injured Spine; Now in Wheelchair, Egyptian-Born Teacher Objects to Plan to Send Him to Native Land," *Wash. Post*, Aug. 13, 2005, at A18; Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 83-115, Ch. 12-13, AMR 51/063/2005 (13 May 2005); Amnesty International, *Guantánamo: An Icon of Lawlessness*, Jan. 6, 2005, at 3-5; Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo," *New York Times*, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, Dec. 7, 2004, at A19.

34.   In fact, many of the egregious interrogation techniques used in the Abu Ghraib detention center and other detention facilities in Iraq—such as the use of aggressive dogs to intimidate detainees, sexual humiliation, stress positions, and sensory deprivation—were pioneered at Guantánamo. *See* Josh White, "Abu Ghraib Dog Tactics Came From Guantanamo; Testimony Further Links Procedures at 2 Facilities," *Wash. Post*, July 27, 2005, at A14; *and* Josh White, "Abu Ghraib Tactics Were First Used at Guantanamo," *Wash. Post*, July 14, 2005 at A1.

US2000 10900552.1

35.    The unlawful interrogation techniques used by Respondents at Guantánamo include not only direct physical and psychological abuse but also impermissible conduct intended to undermine the detainees' due process rights, such as representing to detainees that government agents are their habeas lawyers for the express purpose of extracting information from the detainees.  *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

36.    In addition, military defense lawyers have been instructed to limit their representation of detainees in a manner that would operate to the detriment of their clients in violation of due process requirements.  *See* David Johnston & Neil Lewis, "Lawyer Says Military Tried To Coerce Detainee's Plea," *NY Times,* June 16, 2005, at A25 (Late Ed.).

37.    Respondents, acting individually or through their agents, have stated that the humanitarian limitations which normally apply to the U.S. military's use of coercive interrogation techniques under the auspices of the Department of Defense, *do not apply* to interrogations conducted by CIA agents or other specially-designated government officers assigned to such work.  *See* Amnesty International, "Guantánamo and Beyond: The Continuing Pursuit of Unchecked Executive Power," at 27-43, Ch. 5, AMR 51/063/2005 (13 May 2005); Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

38.    In published statements, President Bush and Secretary Rumsfeld, and the predecessors of Hood and Bumgarner, respectively, Lenhert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely.  *See, e.g.,* Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S.

US2000 10900552 1

Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held 'We have to look at Camp X-ray as a work in progress [...]' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards."); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002 ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

39.    According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantanamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited August 24, 2005).

40.    Counsel for Respondents have also consistently maintained that the United States may hold the detained Petitioners under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of Dec. 1, 2004 Oral Argument on Motion to Dismiss at 22-24, Statements of Principle Deputy Associate Attorney Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1.

41.    In fact, the Government has failed to release a number of Guantánamo detainees even after it has determined that the detainees are "no longer enemy combatants." *See* Robin

Wright, "Chinese Detainees Are Men Without a Country; 15 Muslims, Cleared of Terrorism Charges, Remain at Guantanamo With Nowhere to Go," *Wash. Post*, August 24, 2005, at A1 (Final Ed.); Ben Fox, "U.S. to Ease Conditions for Some Detainees," *Chicago Trib.*, Aug. 11, 2005, at C4.

42.    The Government has acknowledged its plan to begin constructing a new, more permanent detention facility at Guantánamo. Christopher Cooper, "In Guantánamo, Prisoners Languish in a Sea of Red Tape," *Wall Street Journal*, Jan. 26, 2005, at A1; Associated Press, "Guantánamo Takes on the Look of Permanency," Jan. 9, 2005.

### Rendition

43.    During interrogations, detainees have also been threatened with rendition or transfer to countries that permit indefinite detention without charge or trial and/or routinely practice torture. Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition. This practice, known as "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture. *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

44.    The U.S. government's "extraordinary rendition" program has been well documented by key American and international news organizations, including the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to news accounts:

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics -- including torture

US2000 10900552 1

and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . . that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

45.    In fact, the Government has recently announced its intention to render many Guantánamo detainees to countries which have a documented record of human rights violations, including state-sponsored torture. *See, e.g.*. Matthew Waxman, "Beyond Guantanamo," *Wash. Times*, Aug. 20, 2005, at A17; Robin Wright and Josh White, "U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements With 10 Muslim Governments," *Wash. Times*, Aug. 9, 2005, at A13; Neil Lewis, "Guantanamo Detention Site Is Being Transformed, U.S. Says," *NY Times*, Aug. 6, 2005, at A8 (Late Ed.); Paul Richter, "U.S. to Repatriate 110 Afghans Jailed at Guantanamo Bay," *LA Times*, Aug. 5, 2005, at A18.

46.    Moreover, upon information and belief, the Government is conditioning the transfer or rendering of detainees to their countries of origin on the requirement that the home country imprison the detainee without regard to the detainee's individual factual or legal situation. *See* Robin Wright and Josh White, "U.S. Holding Talks on Return of Detainees; Administration Close to Reaching Agreements With 10 Muslim Governments," *Wash. Post*, August 9, 2005, at A13; BBC Worldwide Monitoring, "USA to release 107 Yemenis from Guantanamo Bay," August 10, 2005 (available from

LEXIS, MWP90 file) ("The US authorities declared a few days ago that they would extradite detainees from Guantanamo Bay to Afghanistan, Saudi Arabia and Yemen on the condition [that they are] to be put in jail.").

47.    Petitioner Shakhrukh Hamiduva is a citizen of Uzbekistan.    Petitioner Shakhrukh Hamiduva fled Uzbekistan as a teenager after his father and numerous other Muslim family members were killed or imprisoned.    Petitioner Shakhrukh Hamiduva fears for his own safety and the safety of his family members if he is returned to his home country.

48.    Over the past five years, the atrocities of the Uzbek government, led by President Islom Karimov, have become increasingly visible to the Western world.    Particularly, the Andijan massacre of May 13, 2005, is viewed by the international community as one of the most egregious human rights violations in recent years.    "Uzbeks Say Troops Shot Recklessly at Civilians," *New York Times*, May 17, 2005. On that date, the Uzbek government fired into a crowd of protestors gathered around a prison, killing hundreds of civilians.    "Preliminary Findings on the Events in Andijan, Uzbekistan," Organization for Security and Co-operation in Europe, June, 2005, at 23.

49.    The Andijan massacre is just the most visible of the many human rights violations instituted by the Karimov-led Uzbek government.    The United Nations has found torture "institutionalized, systematic, and rampant" in Uzbekistan's justice system.    "Civil and Political Rights, Including the Questions of Torture and Detention," United Nations Economic and Social Council, Feb. 3, 2003, at 5. This is the same system Petitioner Shakhrukh Hamiduva would be subjected to if he is returned to Uzbekistan.

50.    Upon information and belief, Petitioner Shakhrukh Hamiduva is at risk of being rendered, returned or transferred without lawful process to a country that permits indefinite detention without process and/or engages in torture or abuse during interrogation.

IV.
CAUSES OF ACTION

FIRST CLAIM FOR RELIEF
(COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH
AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES -
UNLAWFUL DEPRIVATION OF LIBERTY)

51.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

52.    By the actions described above, Respondents, acting under color of law, have violated
and continue to violate common law principles of due process as well as the Due Process
Clause of the Fifth Amendment to the Constitution of the United States.  President Bush
has ordered the prolonged, indefinite, and arbitrary detention of individuals including
Petitioner Shakhrukh Hamiduva, without due process of law, and the remaining
Respondents have implemented those orders.   Respondents' actions deny Petitioner
Shakhrukh Hamiduva the process accorded to persons seized and detained by the United
States military in times of armed conflict as established by, *inter alia*, the Uniform Code
of Military Justice,  Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth
Geneva Conventions, the common law, and customary international law as reflected,
expressed, and defined in multilateral treaties and other international instruments,
international and domestic judicial decisions, and other authorities.

53.    To the extent that Petitioner Shakhrukh Hamiduva's detention purports to be authorized
by the Executive Order, that Order violates the Fifth Amendment on its face and as
applied to Petitioner, and therefore also violates 28 U.S.C. § 2241 (c)(3).

54.    To the extent that Petitioner Shakhrukh Hamiduva's detention is without basis in law and
violates the common law principles of due process embodied in 28 U.S.C. § 2241 (c)(1),
Petitioner's detention is unlawful.

55.    Accordingly, Petitioner Shakhrukh Hamiduva is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

56.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

57.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Shakhrukh Hamiduva to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

58.    Accordingly, Petitioner Shakhrukh Hamiduva is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

59.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

60.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Shakhrukh Hamiduva the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

61.    Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

62.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

18

63.    Accordingly, Petitioner Shakhrukh Hamiduva is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

FOURTH CLAIM FOR RELIEF
(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW -
ARBITRARY DENIAL OF DUE PROCESS)

64.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

65.    By the actions described above, Respondents have denied and continue to deny Petitioner Shakhrukh Hamiduva the process due to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

66.    Because Respondents are detaining Petitioner Shakhrukh Hamiduva "under or by color of the authority of the United States," they are violating 28 U.S.C. § 2241(c)(1), and because Respondents are detaining Petitioner Shakhrukh Hamiduva "in violation of the Constitution or laws or treaties of the United States," they are also violating 28 U.S.C. § 2241(c)(3). Petitioner Shakhrukh Hamiduva is therefore entitled to habeas relief.

67.    Petitioner Shakhrukh Hamiduva is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

FIFTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - TORTURE)

68.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

69.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner Shakhrukh Hamiduva in order to obtain coerced information or confessions from him, punish or intimidate Petitioner Shakhrukh Hamiduva or for other purposes. Among other

19

abuses, Petitioner Shakhrukh Hamiduva has been held in and surrounded by conditions of isolation; constant vulnerability to repeated interrogation and severe beatings; the threat or reality of being kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement or the threat of solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

70.     The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71.     Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner Shakhrukh Hamiduva.

72.     Petitioner Shakhrukh Hamiduva was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief and other relief to be determined at trial.

<u>SIXTH CLAIM FOR RELIEF</u>
<u>(ALIEN TORT STATUTE - WAR CRIMES)</u>

73.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

74.     By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of

Petitioner Shakhrukh Hamiduva constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

75.     As a result of Respondents' unlawful conduct, Petitioner Shakhrukh Hamiduva has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE –
CRUEL, INHUMAN OR DEGRADING TREATMENT)

76.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

65.     The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner Shakhrukh Hamiduva, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

66.     The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

US2000 10900552.1

67.   Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner Shakhrukh Hamiduva.

68.   Petitioner Shakhrukh Hamiduva was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief as well as other relief to be determined at trial.

EIGHTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE -
ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

69.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

70.   The acts described herein constitute arbitrary arrest and detention of Petitioner Shakhrukh Hamiduva in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71.   Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Shakhrukh Hamiduva in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

72.   As a result of Respondents' unlawful conduct, Petitioner Shakhrukh Hamiduva has been and is deprived of his freedom, separated from his family, and forced to suffer severe

22

physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

### NINTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - ENFORCED DISAPPEARANCE)

73.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

74.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner Shakhrukh Hamiduva in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

75.    As a result of Respondents' unlawful conduct, Petitioner Shakhrukh Hamiduva has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory and injunctive relief and such other relief as the court may deem appropriate.

### TENTH CLAIM FOR RELIEF
### (ARTICLE II OF THE UNITED STATES CONSTITUTION - UNLAWFUL DETENTION)

76.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

77.    Petitioner Shakhrukh Hamiduva is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind. The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 524 U.S. 507, 522 n. 1, 124 S. Ct. 2633, 2642 n.1 (2004) (plurality opinion).

23

78.    By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Shakhrukh Hamiduva and transfer him to military detention, and by authorizing and ordering their continued military detention at Guantánamo.    All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Shakhrukh Hamiduva.

79.    The military seizure and detention of Petitioner Shakhrukh Hamiduva by the Respondents is *ultra vires* and illegal because it is in violation of Article II of the United States Constitution.    To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

80.    To the extent that Respondents assert that their authority to detain Petitioner Shakhrukh Hamiduva de rives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

81.    Accordingly, Petitioner Shakhrukh Hamiduva is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### ELEVENTH CLAIM FOR RELIEF
### (VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

82.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

83.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat

24

against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

84. By arbitrarily and capriciously detaining Petitioner Shakhrukh Hamiduva in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

85. Accordingly, Petitioner Shakhrukh Hamiduva is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

TWELFTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS
DENIAL OF DUE PROCESS)

86. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

87. By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Shakhrukh Hamiduva the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

88. Accordingly, Petitioner Shakhrukh Hamiduva is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

THIRTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - TORTURE AND CRUEL, INHUMAN
OR DEGRADING TREATMENT)

89. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

25

90.     By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Shakhrukh Hamiduva to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

91.     Accordingly, Petitioner Shakhrukh Hamiduva is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

FOURTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

92.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

93.     Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Shakhrukh Hamiduva's right to consult with counsel by conditioning counsel's access to Petitioner Shakhrukh Hamiduva on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Shakhrukh Hamiduva's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

94.     Accordingly, Petitioner Shakhrukh Hamiduva is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF
(DUE PROCESS CLAUSE - RENDITION)

95.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

96.     Upon information and belief, Petitioner Shakhrukh Hamiduva is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner Shakhrukh Hamiduva to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner

26

Shakhrukh Hamiduva's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

97.    Accordingly, Petitioner Shakhrukh Hamiduva is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF
(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

98.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

99.    Upon information and belief, Petitioner Shakhrukh Hamiduva is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

100.    Accordingly, Petitioner Shakhrukh Hamiduva is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

SEVENTEENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- RENDITION)

101.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

102.    Upon information and belief, Petitioner Shakhrukh Hamiduva is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner Shakhrukh Hamiduva to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner Shakhrukh Hamiduva's rights under customary international law, which may be vindicated under the Alien Tort Statute.

27

103.     Accordingly, Petitioner Shakhrukh Hamiduva is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## V.

## STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(B)(3)

104.     Under the unique and extraordinary circumstances of this case, the factual allegations made in paragraphs 4, 10, 13, 15, 21, 28, 29, 30, 46, and 50 that are made upon information and belief are made pursuant to Rule 11(b)(3) of the Federal Rules of Civil Procedure on the basis that those allegations "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Upon information and belief, Petitioner desires undersigned counsel to file this petition on his behalf.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.     Grant the Writ of Habeas Corpus and order Respondents to release Petitioner Shakhrukh Hamiduva from his current unlawful detention;

2.     Order that Petitioner Shakhrukh Hamiduva be brought before the Court or before a Magistrate Judge assigned by the Court at a convenient facility to conduct proceedings under the supervision of the Court to vindicate his rights;

3.     Order that Petitioner Shakhrukh Hamiduva cannot be transferred to any other country without the specific, written agreement of Petitioner Shakhrukh Hamiduva and his counsel while this action is pending;

4.    Order that Petitioner cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petition Shakhrukh Hamiduva will be subject to torture;

5.    Order Respondents to allow counsel to meet and confer with Petitioner Shakhrukh Hamiduva in private and unmonitored attorney-client conversations;

6.    Order Respondents to cease all interrogations of Petitioner Shakhrukh Hamiduva, direct or indirect, while this litigation is pending;

7.    Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Shakhrukh Hamiduva;

8.    Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

9.    Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner Shakhrukh Hamiduva without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law; and

10.    Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner Shakhrukh Hamiduva's rights under the common law, the United States Constitution, federal statutory law, and international law, including, if necessary, designating Petitioner Adina Hamidova to act as Next Friend of Petitioner Shakhrukh Hamiduva.

Dated:    June 27, 2008                Respectfully submitted,


_A. Stephens Clay_ _____
A. STEPHENS CLAY (D.C. Bar No. 937060)
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
(404) 815-6500
(404) 815-6555 (fax)

STEWART D. FRIED (D.C. Bar No. 457801)
KILPATRICK STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, D.C. 20005
(202) 824-1434
(202) 585-0066 (fax)

*Counsel for Petitioners*

US2000 10900552 1

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners hereby certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioners without compensation.

Dated:     June 27, 2008

A. STEPHENS CLAY (D.C. Bar No. 937060)
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
(404) 815-6500
(404) 815-6555 (fax)

STEWART D. FRIED (D.C. Bar No. 457801)
KILPATRICK STOCKTON LLP
607 14th Street, NW, Suite 900
Washington, D.C. 20005
(202) 824-1434
(202) 585-0066 (fax)

*Counsel for Petitioners*

US2000 10900552 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Shakhrukh Hamiduva,**<br>    **Detainee (ISN 22),**<br>    **Guantanamo Bay Naval Station**<br>    **Guantanamo Bay, Cuba;**<br><br>**Adina Hamidova,**<br>    **as the Next Friend of Shakhrukh**<br>    **Hamiduva;**<br><br>*Petitioners,*<br><br><br>v.<br><br><br>**GEORGE W. BUSH**, *et al.,*<br><br>*Respondents.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)       No. _____ |

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2008, I filed the foregoing Petition for Writ of Habeas Corpus by causing an original and four copies to be delivered to the Court Security Office via hand delivery.

I further certify that upon receiving clearance from the Court Security Office, one copy of this document will be forwarded by the Petitioners' Counsel to each of the following persons:

**Kenneth L. Wainstein**
U.S. Attorney
District of Columbia District
Judiciary Center
555 4th Street, NW
Washington, D.C. 20530

**Michael Mukasey**
Attorney General of the United States
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., NW
Room 5111
Washington, D.C. 20530

32

**George W. Bush**
President, United States of America
The White House
1600 Pennsylvania Avenue, NW
Washington, D.C. 20301-1000

**Robert M. Gates**
Secretary, U.S. Dep't. of Defense
1000 Defense Pentagon
Washington, D.C. 20301-1000

**Rear Admiral Mark H. Buzby**
Commander, Joint Task Force—GTMO
JTF—GTMO
APO AE 09360

**Rear Admiral Mark H. Buzby**
United States Navy
Pentagon
Washington, D.C. 20310-0200

**Army Colonel Bruce Vargo**
Commander, Joint Detention Group
Joint Task Force—GTMO
APO AE 09360

**Army Colonel Bruce Vargo**
United States Army
Pentagon
Washington, D.C. 20310-0200

Dated:      June 27, 2008

A. STEPHENS CLAY (D.C. Bar No. 937060)
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
(404) 815-6500
(404) 815-6555 (fax)

*Counsel for Petitioners*

33

**Exhibit A to Petition**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Shakhrukh Hamiduva,<br>        Detainee,<br>        Guantanamo Bay Naval Station<br>        Guantanamo Bay, Cuba;<br><br>Adina Hamidova,<br>        as the Next Friend of Shakhrukh<br>        Hamiduva;<br><br>*Petitioners,*<br><br>v.<br><br>GEORGE W. BUSH,<br>        President of the United States;<br><br>ROBERT M. GATES,<br>        Secretary, United States<br>        Department of Defense;<br><br>REAR ADMIRAL DAVID M. THOMAS, JR.,<br>        Commander, JTF-GTMO; and<br><br>COLONEL BRUCE VARGO,<br>        Commander, Joint Detention<br>        Operations Group, JTF - GTMO,<br><br>*Respondents.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF STEWART D. FRIED

STEWART D. FRIED declares as follows:

1.       My name is Stewart D. Fried.  I am over the age of 21 and am competent to provide the testimony set forth in this Declaration.

2.       I am an attorney licensed to practice law and in good standing in the State of Florida and the District of Columbia.  I am an associate with the firm Kilpatrick Stockton LLP ("Kilpatrick"), practicing out of the firm's Washington, D.C. office.

3.       Several Kilpatrick attorneys are serving as counsel for Mr. Shakhrukh Hamiduva, a detainee being held at the United States Naval Base at Guantanamo Bay, Cuba and one of the

Petitioners in this action. I have knowledge of the facts stated in this Declaration based upon my own personal knowledge and knowledge gained in the course of my representation of Mr. Hamiduva.

4.    On December 13, 2006, Sami al Hajj, at the time also a detainee being held at Guantanamo and a personal friend of Mr. Hamiduva, acting as Mr. Hamiduva's Next Friend, authorized the Center for Constitutional Rights to seek legal redress on Mr. Hamiduva's behalf. This authorization letter is attached hereto as Exhibit 1.

5.    The Center for Constitutional Rights has actively sought legal representation for Mr. Hamiduva and for the other detainees being held at Guantanamo who have authorized the Center for Constitutional Rights to seek legal redress on their behalf.

6.    On or about February 27, 2007, the Center for Constitutional Rights asked Kilpatrick to assume Mr. Hamiduva's representation on a *pro bono* basis. The firm agreed and was then forwarded the attached authorization letter, Exhibit 1.

7.    On March 9, 2007, individuals working in conjunction with the Center for Constitutional Rights met with Petitioner Adina Hamidova, Mr. Hamiduva's mother. Ms. Hamidova also authorized the Center for Constitutional Rights to seek legal redress on Mr. Hamiduva's behalf. This second authorization letter was forwarded to Kilpatrick on March 9, 2007. This authorization letter is attached hereto as Exhibit 2.

8.    Attorneys with Kilpatrick Stockton LLP thereafter filed a DTA action on Mr. Hamiduva's behalf in the United States Court of Appeals for the District of Columbia. The parties agreed to entry of a Consent Protective Order in that proceeding, and attorneys from Kilpatrick have scheduled a trip to Guantanamo Bay to visit with Mr. Hamiduva for July 28-30, 2008.

- 2 -

9.    On June 19, 2008, Kilpatrick filed this action on Petitioner's behalf. A protective order has not yet been entered in this action.

10.    Once attorneys from Kilpatrick have had an opportunity to meet with Mr. Hamiduva, they will obtain his direct, personal authorization to seek legal redress on his behalf.

*    *    *

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on June 25, 2008.

Stewart D. Fried

- 3 -

**Exhibit 1 to Declaration**

JAN-15-2007 16:12    P.04

FOU

## GUANTANAMO BAY

I, SAMI AL HAJI, hereby state that I am familiar with the American legal concept of 'next friend' and I wish to act as next friend for the following prisoner who is being held here in Guantanamo Bay. The Department of Defense's Enemy Combatant Notice (ECN) that was distributed to detainees expressly stated that a detainee could have a "family member or friend" file a habeas petition on the detainee's behalf. Because this man is not familiar with the U.S. legal system and customs, and because it is so difficult for a prisoner in his circumstances to have a family member perform this task, I am acting as his friend. He is from Uzbekistan and has been held at this prison for roughly five years without access to legal counsel.

## HAMIDUVA, SHAKHRUKH

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on the 13 day of December, 2006.

Sami al-Hajj

FOUO

**Exhibit 2 to Declaration**

**Authorization**

Please return to:
Center for Constitutional Rights
ATTN: Gita Gutierrez
666 Broadway, 7th Floor
New York, NY 10012

Date: _9 03 07_

My name is _Xamidova Onua Mamurzul__ I am acting as a next friend for _(the mother)_
_Khamidov, Shakhrukh_, a citizen of
_Uzbekistan_, who is being held at Guantanamo Bay.

I know that he would want me to act on his behalf to secure legal representation for him. I hereby authorize Gitanjali Gutierrez of the Center for Constitutional Rights and any person assigned by this lawyer to act on my behalf and on this detainee's behalf, to secure any documents and information concerning this detainee that is necessary for his defense, and to seek whatever redress they believe to be in his best interests, in the Courts of the United States and in any other legal forum available.

Signature: _____

Print Name: _Xamudova Onua Mamurzul__

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Shakhrukh Hamiduva<br><br>Adina Hamidova | George W. Bush et al. |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  09360
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  20500
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

A. Stephen Clay
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
(404) 815-6500

ATTORNEYS (IF KNOWN)

Michael Mukasey
Attorney General of the United States
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., NW, Room 511
Washington, DC 20530

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
◉ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act

Social Security:
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**       OR       ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ⊙ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| [X] 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

28 USC 2241 & 22 USC 2242 - Petition for Writ of Habeas Corpus - Guantanamo detainee.

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $**    Check YES only if demanded in complaint
**JURY DEMAND:**    YES ☐    NO [X]

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO [X]    If yes, please complete related case form.

**DATE** July 17, 2008    **SIGNATURE OF ATTORNEY OF RECORD**

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.